# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LeROY A. GLAZER,

              **Plaintiff,**

    vs.                                                                         Case No. 05-C-0130

**EUGENE J. BROOKHOUSE,**
**EUGENE J. BROOKHOUSE, S.C.,**
**WILLIAM K. RICHARDSON,**
**FRANK J. PARISE,**
**BROOKHOUSE, RICHARDSON & PARISE,**
**Attorneys at Law,**

              **Defendants.**

## DECISION AND ORDER

Plaintiff LeRoy Glazer ("Glazer"), a citizen of California brings an action relating to a trust created by his mother, Dorothy M. Ruffalo ("Ruffalo"). Glazer has named as Defendants, three attorneys: John Brookhouse ("Brookhouse"), William K. Richardson ("Richardson"), and Frank J. Parise ("Parise"), and two law firms: Eugene J. Brookhouse, S.C. ("Brookhouse S.C."), and Brookhouse, Richardson & Parise ("BR&P firm"). Glazer alleges that all Defendants are citizen of Wisconsin. Glazer seeks compensatory damages in excess of $150,000, costs and disbursements.

Glazer filed a motion for declaratory judgment that he has standing to sue on his first cause of action for negligence.[1] (Docket No. 4.) The Defendants state that while Glazer's

---

[1] The second cause of action in the complaint is for breach of duty to a client.

approach is somewhat unorthodox, they do not object to the Court ruling on the motion. (Defs.' Br. on the Issue of Standing at 2.)

This Court has subject matter jurisdiction over the matter based upon diversity of citizenship and an amount in controversy in excess of $75, 000, exclusive of interests and costs. *See* 28 U.S.C. § 1332 (a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

*Applicable Standard*

In a diversity case, the Court applies federal procedural law and state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999). The Court will apply the state substantive law declared by the state's highest court. *Affiliates FM Ins, Co. v. Trane Co.*, 831 F.2d 153, 155 (7th Cir. 1987).

When standing is challenged on the basis of the pleadings, the Court will accept as true all material allegations of the complaint. *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 501(1975)); *Reid v. Ill. State Bd. of Educ.*, 388 F.3d 511, 514 (7th Cir. 2004).

*Facts*

On September 2, 1994, Brookhouse, acting as the attorney for Ruffalo, prepared and had Ruffalo sign a revocable trust ("the Ruffalo Trust") naming Glazer as the sole beneficiary of the trust. (Compl. ¶ 7.) In January 2002, Ruffalo was declared mentally incompetent by her psychiatrist, Dr. A. Shah ("Shah") and her treating physician, Dr. Scott Feldy ("Feldy"). (*Id.* ¶ 8.)

On March 4, 2002, Brookhouse as counsel for Ruffalo (and hence the Defendants) was directly advised by Feldy that Feldy and Ruffalo's treating psychiatrist had declared Ruffalo to be mentally incompetent. (*Id*. ¶ 9.) Nine days later, on March 13, 2002, although Brookhouse knew of Ruffalo's mental incompetence, Brookhouse prepared and had Ruffalo sign an amendment to the Ruffalo Trust. (*Id*. ¶ 11.) The amendment removed Glazer as the sole beneficiary and made him a co-beneficiary of the Ruffalo Trust with Larry Senkbeil and Terry Senkbeil ("Senkbeils"). (*Id*. ¶ 11.) Ruffalo died in October 2002. (*Id*. ¶ 12.)

After Ruffalo's death, Glazer and the Senkbeils litigated the validity of the amendment to the Ruffalo Trust. (*Id*. ¶ 13.) Glazer suffered in excess of $150,000 in damages in settling the lawsuit, plus costs and attorney's fees. (*Id*.) The conduct and omissions of Brookhouse in aiding and allowing Ruffalo to amend the Ruffalo Trust, while knowing she had been declared incompetent and therefore lacked testamentary capacity constitutes negligence. (*Id*. ¶ 17.) The execution of the amendment to the trust was a transaction which was intended to affect Glazer's interests, caused foreseeable harm to him by reducing his interest in the Ruffalo trust, and caused certain damage to Glazer in the subsequent litigation with the Senkbeils. (*Id*. ¶ 18.)

*Analysis*

Generally, an attorney is not liable to third parties for negligent acts committed within the scope of the attorney-client relationship. *Green Spring Farms v. Kersten*, 401 N.W.2d

816, 823 (Wis. 1987). However, Wisconsin courts recognize an exception to this rule in the context of estate planning.[2]

In *Auric v. Cont'l Cas. Co.*, 331 N.W.2d 325, 329 (Wis. 1983) the Wisconsin Supreme Court created an exception to the general rule of immunity to non-clients. The *Auric* court exception gives standing to non-client beneficiaries to bring a malpractice claim against an attorney for damages suffered by the non-client beneficiary caused by the attorney's negligence. In *Auric* a will was denied admission to probate because, due to attorney negligence, it was not executed according to proper formalities. The right of a third party beneficiary to sue for damages caused by this negligence was established. *Id.*

In recognizing the exception, the *Auric* court adopted a five-factor balancing test found in *Lucas v. Hamm*, 364 P.2d 685, 687 (Cal. 1961). The five factors are: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered harm; (4) the closeness of connection between the defendant's conduct and the harm; and (5) the policy of preventing future harm. *Auric*, 331 N.W.2d at 329.

The *Auric* court acknowledged the existence of the right under the Wisconsin Constitution to make a will and have it carried out according to the testator's intent. *Id.* Such right reflects a "strong concern that people should be as free as possible to dispose of their property upon their death." *Id.* The court stated that allowing a will beneficiary to maintain an action against an attorney who negligently drafts or supervises the execution of a will is one way

---

[2] To date, the Wisconsin Supreme Court has limited the balancing-test of *Auric v. Cont'l Cas. Co.,* 311 N.W.2d 325, 329 (Wis. 1983) to the estate planning context. *See Green Spring Farms*, 401 N.W.2d at 823.

of making an attorney accountable for his or her negligence. *Id.* Imposing such liability on attorneys will cause them to increase the care with which they draft wills and see to their execution. *Id.* The Wisconsin Supreme Court stated that "[p]ublic policy supports the imposition of liability on an attorney who acts negligently in drafting or supervising the execution of a will resulting in a loss to a beneficiary named" in the will and the lack of privity should not bar such an action. *Id.*

In *Beauchamp v. Kemmeter*, 625 N.W.2d 297, 301-02 (Wis. Ct. App. 2000), the appeals court explored the public policies affected by attorney liability to non-clients for negligence. The *Beauchamp* court identified two distinct situations: (1) when a non-client is named in an executed or unexecuted will (or trust) and (2) when a non-client claiming to be an intended beneficiary is not named in an executed or unexecuted will (or trust). *Id.* Holding a drafting attorney liable for negligence to third-parties who are named beneficiaries promotes the public policy of making "attorneys accountable for faulty drafting, lack of diligence, or failure to execute wills according to necessary formalities." *Id.* at 302. On the other hand, preventing unnamed beneficiaries from bringing a claim for negligence against a drafting attorney promotes the public policies of protecting testator intent, preventing attorneys from facing conflicts of interest, and facilitating predictability in estate planning. *Id.* at 301.

In this case, Glazer, a non-client, contends that Brookhouse's negligence in allowing Ruffalo to amend the trust when he knew that Ruffalo was incompetent at the time, he drafted, and she executed, the amendment violates the public policy of protecting testator intent.

The Court agrees with Glazer and analysis of each of the *Auric* factors supports that contention and Glazer's standing to sue.

First, the Ruffalo trust's intent was to establish Glazer as the sole beneficiary of that trust. Second, it was foreseeable that Glazer would have to be involved in litigation if his share of that trust was reduced through attorney negligence. Third, because litigation is costly, the degree of certainty that Glazer would suffer a harm from such litigation is high. Fourth, Glazer would not have suffered the harm but for Brookhouse's alleged negligence in allowing the incompetent Ruffalo to amend the trust; thus establishing a direct connection between Brookhouse's conduct and the harm sustained by Glazer.

Finally, public policy of preventing future harm weighs in favor of recognizing Glazer's standing to sue. When Ruffalo was competent, her intent was to give her entire estate to her son, Glazer, as evidenced by the original trust. Brookhouse amended her trust to include two other beneficiaries knowing that a person who is mentally incompetent does not have testamentary capacity to make a valid will or trust. *See O'Loughlin v. Lumphrey*, 183 N.W.2d 133, 136 (Wis. 1971). When Brookhouse amended the Ruffalo Trust during Ruffalo's incompetency, Ruffalo was incapable of and unable to alter her original intent. A "subsequent intent" in the form of the amendment to the trust did not exist and the public policy of protecting a testator's intent applies in this case *only* to the intent that Ruffalo was capable of forming in creating the original trust. The public policy of protecting Ruffalo's intent is promoted by allowing Glazer standing to sue.

Because Glazer is the sole named beneficiary under the original trust the Court's ruling also supports the public policy of holding attorneys accountable for faulty drafting, lack of diligence, or failure to execute wills according to necessary formalities. *See Beauchamp*, 625 N.W.2d at 302.

Based on the foregoing, the Court concludes that, under Wisconsin law, Glazer has standing to bring his negligence claim against Brookhouse. Glazer's motion for declaratory judgment that he has standing to bring his first cause of action for negligence is granted.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Glazer's motion for declaratory judgment that he has standing to sue (Docket No. 4) is **GRANTED**.

The counsel for the parties **SHALL PARTICIPATE** in a telephone scheduling conference that the Court will conduct on **June 1, 2006 at 9:30 a.m.** The Court will initiate the call.

The purpose of the conference call will be to establish a Scheduling Order which will limit the time:

1. to join other parties and to amend the pleadings;

2. to file and hear motions;

3. to complete discovery; and

4. to disclose experts.

The Scheduling Order may also include:

5. the date or dates for subsequent Rule 16 conferences, a final pretrial conference and trial; and

6. any other matters appropriate in the circumstances of the case.

The time limitations set forth in the Scheduling Order shall not be modified except upon showing of good cause and by leave of the Court. Fed. R. Civ. P. 16(b)(6).

Special attention should be given to Rule 26(f), which requires the parties to conduct a settlement/discovery conference at least 21 days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rule 26 also mandates that the parties, within 14 days of their conference: (1) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (2) make the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in subsections (1)-(4) of Rule 26(f), the Court requests that the proposed discovery plan submitted by the parties include a very brief statement of the nature of the case, lasting no more than several sentences.

Dated at Milwaukee, Wisconsin this 31st day of March, 2006

**BY THE COURT**

**s/ Rudolph T. Randa**

**Hon. Rudolph T. Randa**
**Chief Judge**