# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LeROY A. GLAZER,**

              **Plaintiff,**

v.                                        **Case No. 05-C-130**

**EUGENE J. BROOKHOUSE,**
**EUGENE J. BROOKHOUSE, S.C.,**
**WILLIAM K. RICHARDSON,**
**FRANK J. PARISE, and**
**BROOKHOUSE, RICHARDSON & PARISE,**
**Attorneys at Law,**

              **Defendants.**

## DECISION AND ORDER

Two motions in limine are pending in this legal malpractice and breach of contract action brought by Plaintiff LeRoy A. Glazer ("Glazer").[1] On March 5, 2007, a trial to the Court will commence on Glazer's claims against the Defendants, Attorney Eugene Brookhouse ("Brookhouse"); Brookhouse's service corporation, Eugene Brookhouse, S.C. ("Brookhouse S.C."); a law firm designated as Brookhouse, Richardson and Parise ("BR&P firm"); and two other attorneys, William Richardson ("Richardson") and Frank Parise ("Parise") (collectively "Defendants).

### *Background of Claims*

Glazer's mother, Dorothy M. Ruffalo ("Ruffalo") passed away in the fall of 2002. The action relates to March 2002 amendments to Ruffalo's Revokable Trust ("Trust").

---

[1] Jurisdiction is afforded by 28 U.S.C. § 1332, because Glazer and the Defendants are citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

Glazer alleges that Brookhouse, knew as of March 4, 2002, that Ruffalo's physician had declared her incompetent. Glazer claims that Brookhouse negligently amended the Trust on March 13, 2002, changing the designation from Glazer as sole beneficiary to Glazer as an equal co-beneficiary with his cousins, Larry Senkbeil and Terry Senkbeil (collectively "Senkbeils"). Glazer also claims that Brookhouse entered into an attorney-client relationship with Glazer as the trustee of the Trust and that Brookhouse breached the duties he owed to Glazer in that capacity.

### *Defendants' Motion in Limine To Exclude Testimony of Randy Nelson*

Pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Defendants seek an order precluding Glazer from calling one of his experts, Attorney Randy S. Nelson ("Nelson"), as a witness at the trial. The Defendants assert that Nelson's opinions as to the "standard of care" for an attorney in Brookhouse's position are entirely subjective and amount to unsupported speculation. (Docket No. 84.)

Rule 702 has been amended to reflect the Supreme Court's decision in *Daubert*. See Fed. R. Evid. 702, 2000 advisory committee note. Expert testimony is admissible if offered by "a witness qualified as an expert by knowledge, skill, experience, training, or education," and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. *See United States v. Conn,* 297 F.3d 548, 555 (7th Cir. 2002). The trial court's basic "gatekeeping" obligation applies not

only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). *See also*, *United States v. Naegele*, No. 05-0151(PLF), __ F.Supp. 2d __,2007 WL 214399,*4-*7 (D.D.C. Jan. 29, 2007) (applying Rule 702 to proposed expert testimony of attorneys); *Talmage v. Harris*, 354 F.Supp. 2d 860, 865-66 (W.D. Wis. 2005) (applying Rule 702 to proposed expert testimony of an attorney).

The proponent of the expert testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note, 2000 Amendments ¶ 1 (interpreting Fed. R. Evid. 104(a)). The federal rules of evidence govern the admissibility of expert testimony in diversity cases since such rules regulate process rather than establishing substantive rights. *See Stutzman v. CRST, Inc.,* 997 F.2d 291, 294 (7th Cir. 1993).

*Daubert* held that the trial courts must function as a "gatekeeper" to ensure that the offered expert testimony is both relevant and reliable. 509 U.S. at 589. The court of appeals for this circuit has interpreted *Daubert* to require trial courts to employ a two-step methodology when determining the admissibility of proffered expert testimony. *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995). First, the district court must determine whether the testimony has been subjected to the scientific method; in other words, it must exclude testimony based on "subjective belief or unsupported speculation." *Id*. (quoting *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)). Second, the trial court must determine whether the testimony has a sufficient nexus with the facts of the case

3

and with the relevant inquiry that it will actually assist the trier of fact in understanding the evidence and performing its function as fact-finder. *Id.*; *see Daubert*, 509 U.S. at 591-92.

*Daubert* sets forth a nonexclusive list of factors or guideposts that a court should consider for this analysis: (1) whether the theory can be and has been verified by the scientific method through testing; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community. *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996). It is incumbent upon the trial court to carefully consider these factors before admitting any expert scientific evidence. The *Daubert* test is a flexible one and there is no requirement that an expert's testimony satisfy each of the listed factors. *United States v. Vitek Supply Corp.*, 144 F.3d 476, 485 (7th Cir. 1998).

Federal courts exercising diversity jurisdiction apply state law to substantive issues. *See Stutzman*, 997 F.2d at 294. Therefore, Wisconsin law supplies the elements of Glazer's negligence and breach of contract claims.

Under Wisconsin law, the plaintiff has the burden of establishing elements of a legal malpractice case: (1) the existence of an attorney-client relationship; (2) the acts of alleged negligence; (3) the negligence was the proximate cause of the injury; (4) damages. *Helmbrecht v. St. Paul Ins. Co.*, 362 N.W.2d 118, 124 (Wis. 1985) (citing *Lewandowski v. Cont'l Cas. Co.*, 276 N.W.2d 284, 287 (Wis. 1979)). Wisconsin law generally requires expert testimony to establish the parameters of acceptable professional conduct, given the underlying factual situation. *Helmbrecht*, 362 N.W.2d at 128. There are two exceptions: (1) when the

breach is so obvious, apparent, and undisputed that it may be determined by the Court as a matter of law; (2) or where the matters to be proven do not involve specialized knowledge, skill or experience. *Olfe v Gordon*, 286 N.W.2d 573, 577 (Wis. 1980).

As an example, expert testimony was not necessary to establish that an attorney acted negligently in failing to draft an offer to purchase and mortgage in accordance with his client's instructions. *Id*. at 184. In comparison, expert testimony on the attorney's duty of care was necessary to determine whether a reasonably prudent attorney could have believed that a witness could assist the testator by supporting the testator's wrist or hand so that the testator could sign a will without an express request by the testator. *DeThorne v. Bakken*, 539 N.W.2d 695, 697-98 (Wis. Ct. App. 1995).

An issue in this case is whether Brookhouse's conduct in determining that Ruffalo had testamentary capacity to amend the Trust fell within the parameters of acceptable professional conduct in determining whether Ruffalo had testamentary capacity. *See Olfe*, 286 N.W.2d at 277. "[T]he general mental condition of one who executes a will is only peripherally relevant, for a person may have a general or usual condition of inability to comprehend and yet have lucid intervals, during which time there is demonstrated testamentary capacity and a will may be appropriately executed." *In re Estate of Becker*, 251 N.W.2d 431, 434 (Wis. 1977) (citations omitted). The question of competency is determined at the time of execution of the will. *In re Estate of Sorensen*, 274 N.W.2d 694, 697 (Wis. 1979) (citation omitted). *In re O'Loughlin's Estate*, 183 N.W.2d 133, 136 (Wis. 1971), summarizes Wisconsin's well-established standard for testamentary capacity.

> The testator must have mental capacity to comprehend the nature, the extent, and the state of affairs of his property. The central idea is that the testator must have a general, meaningful understanding of the nature, state, and the scope of his property but does not need to have in his mind a detailed itemization of every asset; nor does he need to knew [sic] the exact value of his property. A perfect memory is not an element of a testamentary capacity. 1 *Page on Wills* (Bowe-Parker) p. 617, sec. 12.12. The testator must know and understand his relationship to persons who are or who might naturally or reasonably be expected to become the objects of his bounty from which he must be able to make a rational selection of his beneficiaries. He must understand the scope and general effect of the provisions of his will in relation to his legatees and devisees. Finally, the testator must be able to contemplate these elements together for a sufficient length of time, without prompting, to form a rational judgment in relation to them, the result of which is expressed in the will.

In this case, the Court has not heard the testimony about Brookhouse's contacts with Ruffalo, particularly the events surrounding her execution of the Trust amendment. Such testimony may impact on the Court's assessment on the need for expert testimony regarding whether Brookhouse's actions fell within the standard applicable to an attorney's duty of care in assessing Ruffalo's testamentary competency. The Court has also not heard testimony regarding Brookhouse's conflict of interest in representing both Ruffalo and Glazer. Whether expert testimony is essential to establish Glazer's entire legal malpractice claim is not yet clear.

Assuming such testimony is necessary, Nelson is a partner of the law firm of Weiss Berzowski Brady LLP where he has been an estate planing practitioner for over 25 years. He also has taught an estate planning workshop to law students for over 21 years as an adjunct professor at Marquette University Law School. For the past 15 years, Nelson has been

6
Case 2:05-cv-00130-RTR    Filed 02/16/07    Page 6 of 11    Document 93

a fellow of the American College of Trust and Estate Counsel. For the past 14 years, Nelson has also has been a speaker at the State Bar of Wisconsin's Annual Estate Planning Update. Nelson also authored Chapter 10,"Estate Planing for Owners of Closely Held Business" in *Eckhardt's Workbook for Wisconsin Estate Planners* (4th ed. 2007 ) and has provided periodic updates. Nelson is qualified as an expert in estate planning by knowledge, experience and training and is qualified to testify about the matters in question. His testimony is based upon his consideration of the transcripts of Brookhouse's July 3, 2006, and March 17, 2004, depositions, the transcript of Glazer's May 10, 2006, deposition and the Statement of Scott R. Feldy, D.O., dated July 14, 2006. Thus, Nelson's testimony satisfies the first prong of Rule 702(2).

In addition to his own expertise in the estate planning area, Nelson cites American College of Trust and Estate Counsel Foundation's *Commentaries on the Model Rules of Professional Conduct*, 132 (4th ed. 2006), http://www.actec.org/Documents/misc/ACTEC-Commentaries_4th_02_14_06.pdf and John R. Price, *Price on Contemporary Estate Planning*, 73 (2d ed. 2000), as well as the standard under Wisconsin law for determining testamentary capacity. Thus, Nelson has used reliable principles and methods of those engaged in estate planning and assessments of the quality of estate planning as required under the second prong of Rule 702.

The third prong of Rule 702 is whether Nelson has applied the principles and methods reliably to the facts of the case. Review of the entire transcript of Nelson's testimony – rather than selected snippets – establishes that, in general, Nelson has applied the principles

and methods reliably to this case. Therefore, Nelson will be allowed to testify as an expert at trial. Cross-examination and the presentation of other expert testimony will be sufficient to expose weaknesses in Nelson's opinions.

Notably, where the gatekeeper and the factfinder are one and the same – that is, the judge – the need to make such decisions prior to hearing the testimony is lessened. *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (citing *United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005)). The scientific reliability requirement is not lessened in such situations; "the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial." *In re Salem*, 465 F.3d at 777. Thus, where the factfinder and the gatekeeper are the same, a court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702. *Id*.

However, Nelson's estimate of the amount of time Brookhouse should have spent with Ruffalo in ascertaining her competency seems, at this point, arbitrary, and is not based on objective criteria. However, this infirmity may be corrected in the larger context of Nelson's testimony at trial. The Defendants' motion in limine is denied at this time subject to renewal at trial.

### *Glazer's Motion in Limine*

Glazer seeks an order in limine pursuant to Rule 26 of the Federal Rules of Civil Procedure limiting the testimony of the Defendants' experts to the opinions expressed in their

reports and the deposition of Attorney Barbara Becker ("Becker"). (Docket No. 79). In the supporting affidavit, Robert L. Elliot ("Elliot"), counsel for Glazer, avers that "Dr. Naughton notes at the top of the 7th page of his report that 'from a medical perspective, the central issue is whether or not Dorothy Ruffalo, after resolution of her medical conditions which contributed to the activation of her DPOA-HC [Durable Power of Attorney-Health Care] had decision-making capacity." (Elliot Aff. ¶6.) However, Elliot avers that Naughton does not express any opinion with regard to that issue. (*Id*.)

The Defendants have no quarrel with Glazer's statement that Rule 26(a)(2)(B) requires a written report from each retained expert witnesses, containing a statement of the witnesses' opinions and the reasons therefore. But, they disagree with Elliot's reading of Naughton's report and believe that "Naughton not only rendered the opinion that . . . Ruffalo had decision-making capacity after her medical conditions stabilized, he set forth the clinical factors, and gave specific examples from her records that supported his opinion." (Defs.' Br. 2.)

Rule 26(a)(b) requires that a retained expert to submit a report which, among other matters, sets forth "a complete statement of all opinions to be expressed and the basis and reasons therefore," identifies all facts and data the witness considered, identifies information on which the expert relied in forming each opinion, and sets forth all cases in which the witness has given testimony in the preceding four years. The advisory committee notes for the 1993 Rule 26 amendments explain that:

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, . . . must prepare **a detailed and complete written report**, **stating the testimony the witness is expected to present during direct examination, together with the reasons therefor.** The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed. Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, **the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness** and it must be signed by the witness.

(emphasis added).

Failure to comply with Rule 26 precludes a party from using expert testimony at trial that was not timely or fully disclosed. Fed. R. Civ. P. 37(c)(1). The sanction of exclusion is mandatory and automatic unless the party can show its Rule 26(a) violation was either justified or harmless. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

Dr. Naughton's report indicates his opinion that "it is readily evident that the treating health care professionals definitely interacted with [Ruffalo] on a daily basis with [Ruffalo] as a active decision maker." As support for his conclusion, he relies upon Hospitality Manor nursing home records and cites examples documented in those records. While Naughton's wording is not couched in traditional opinion language, he has expressed an opinion on whether Ruffalo had decision making capacity, after the resolution of the

10

medical conditions which contributed to the activation of her DPOA-HC. Thus, to the extent Glazer seeks to exclude such testimony of Naughton, his motion in limine is denied. However, Glazer's motion in limine is granted to the extent that the opinion testimony of the Defendants' experts will be limited what is disclosed in their reports.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' motion in limine (Docket No. 84) to exclude the testimony of Randy Nelson is **DENIED** at this time.

Glazer's motion in limine is **DENIED** (Docket No. 79) to the extent Glazer seeks to exclude the opinion testimony of Naughton as to whether Ruffalo had decision-making capacity, after resolution of her medical conditions which contributed to the activation of her DPOA-HC, but **GRANTED** to the extent that the opinion testimony of the Defendants' experts **SHALL BE LIMITED** to what is disclosed in their reports.

Dated at Milwaukee, Wisconsin, this 16th day of February, 2007.

**BY THE COURT:**

**s/Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**